NOTICE
Decision filed 01/03/24. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2024 IL App (5th) 230990-U

NO. 5-23-0990

IN THE

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Montgomery County. |
| | ) | |
| v. | ) | No. 23-CF-173 |
| | ) | |
| DUSTIN M. THOMPSON, | ) | Honorable |
| | ) | Christopher W. Matoush, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE CATES delivered the judgment of the court.
Justices Welch and Moore concurred in the judgment.

**ORDER**

¶ 1    *Held*: Where the defendant filed a motion to reconsider the conditions of his pretrial release, the State was permitted to file a responsive petition to deny pretrial release and the trial court did not err in conducting a hearing on those matters. The State met its burden to show by clear and convincing evidence that the defendant posed a real and present threat to the safety of persons and the community, and that no less restrictive conditions would avoid that threat. The order of detention is affirmed.

¶ 2    The defendant, Dustin M. Thompson, appeals the trial court's order of September 29, 2023, denying pretrial release pursuant to Public Act 101-652 (eff. Jan. 1, 2023),

1

commonly known as the Safety, Accountability, Fairness and Equity Today Act (Act).[1]
See Pub. Act 101-652, § 10-255 (eff. Jan. 1, 2023); see also Pub. Act 102-1104, § 70 (eff. Jan. 1, 2023) (amending various provisions of the Act); *Rowe v. Raoul*, 2023 IL 129248, ¶ 52 (lifting stay and setting effective date as September 18, 2023). We affirm.

¶ 3                                    I. BACKGROUND

¶ 4      On June 5, 2023, the defendant, Dustin M. Thompson, was charged with two felony offenses and three traffic offenses in Montgomery County in case No. 23-CF-173. Count I alleged unlawful possession of a weapon by a felon, a Class 2 felony and nonprobationable offense. Count II alleged possession of methamphetamine, less than 5 grams, a Class 3 felony and extended term eligible offense. Traffic charges were issued for driving on a suspended license (count III), improper traffic lane usage (count IV), and operating a vehicle with a defective windshield (count V). The defendant was arrested and taken into custody that same day.

¶ 5      During the initial appearance on June 5, 2023, the trial court set the defendant's bond in the amount of $75,000, with 10% to apply. The court also imposed other conditions of pretrial release. One of those conditions was that the defendant "not violate any criminal statute of any jurisdiction." On June 22, 2023, by agreement of the parties, the defendant's bond was reduced to $35,000. The defendant was unable to post bond and remained in pretrial detention. On July 19, 2023, while in custody, the defendant had an altercation with

---

[1]The Act has been referred to as the "SAFE-T Act" and the "Pretrial Fairness Act." Neither name is official, as neither appears in the Illinois Compiled Statutes or the public act. See *Rowe v. Raoul*, 2023 IL 129248, ¶ 4 n.1.

another detainee. As a result, the defendant was charged with aggravated battery, a Class 3 felony, in case No. 23-CF-210.[2]

¶ 6    On September 27, 2023, the defendant filed a motion to reconsider the conditions of his pretrial release in 23-CF-173 and 23-CF-210. In his motion, the defendant requested "to elect pretrial release conditions under the SAFE-T Act, according to 725 ILCS 5/110-5." The defendant acknowledged that he was charged with a detainable offense. He argued that he did not pose a threat to any person or the community and that he was not a flight risk. He also argued that his Pretrial Bond Report revealed only one prior crime of violence, a Class A misdemeanor involving a violation of an order of protection. The defendant averred that he had been accepted into the "Adult & Teen Challenge – Greater Midwest" program in Pekin, Illinois, and he attached supporting program-related documents. The defendant requested the court "to allow him to elect pretrial release under the SAFE-T Act and to release him on the least restrictive pretrial conditions." The defendant filed a notice that his motion would be heard on September 29, 2023.

¶ 7    On September 29, 2023, the State filed a verified petition to deny defendant's pretrial release in 23-CF-173, "pursuant to 725 ILCS 5/110-6.1." The State did not file a similar petition in 23-CF-210.

¶ 8    That same date, the trial court called the defendant's motion to reconsider the conditions of pretrial release and the State's petition to deny pretrial release for hearing.

---

[2]The defendant has a related appeal resulting from the aggravated battery case in 5-23-0989.

The court indicated that it would consolidate the defendant's cases in 23-CF-173 and 23-CF-210 for the purpose of hearing the defendant's motions.

¶ 9 During the defendant's proffer, the defendant's attorney acknowledged that unlawful possession of a weapon by a felon was a detainable offense under the Act. Defense counsel argued, however, that the weapon involved, a rifle, was found in the trunk of a vehicle owned by someone other than the defendant, and that the defendant told police officers he was unaware that the rifle was in the vehicle. As to the aggravated battery charge in 23-CF-210, counsel noted that the altercation occurred while the defendant was in custody at the jail and involved another detainee. Counsel argued that aside from that incident, the defendant did not have a history of violence, and that the defendant had "no specific designs" to injure that detainee or anyone else. Counsel claimed the State could not prove by clear and convincing evidence that the defendant posed a threat to any person or the community. Counsel told the court that the defendant had been accepted into the Adult & Teen Challenge program. When counsel spoke with the intake coordinator, he learned that the program was 12 months long and had strict requirements. The defendant would be able to appear in court via the Zoom platform while he awaited trial, and the defendant could sign release forms that would provide the State access to behavior records. Counsel asked the court to release the defendant on his own recognizance or, in the alternative, to grant the defendant leave to attend the Adult & Teen Challenge program.

¶ 10 The State then made its proffer and arguments. The State indicated that on June 4, 2023, an officer with the Litchfield Police Department received information from a local drug task force that an individual by the name of Dustin Thompson was "trying to sell a

4

50-caliber rifle and was possibly in possession of illegal narcotics." The officer ran a computerized search and learned that the defendant's driver's license was suspended. The officer had a description of the subject's vehicle. He spotted the vehicle parked in the parking lot of a gas station. The officer observed an individual matching the defendant's description get into the driver's side of the vehicle. After the vehicle exited the parking lot, the officer initiated a traffic stop. The defendant was identified as the driver. The defendant was detained because he was driving with a suspended license. The officer saw a small amount of cannabis in the vehicle. This gave the officer probable cause to search the vehicle. The officer discovered a "camouflaged 50-caliber rifle" in the trunk. The defendant stated that he was unaware that the rifle was in the vehicle. However, a box of documents bearing the defendant's name was found next to the rifle.

¶ 11    The State also addressed the aggravated battery charge. The State proffered that on July 19, 2023, while the defendant was detained at the jail, surveillance video footage showed the defendant and another detainee fighting. When officers responded to "Dorm II," they observed that the defendant had the detainee on the ground. The defendant repeatedly punched and kicked the detainee. The detainee sustained injuries, including bleeding from the mouth and a few broken teeth, that required medical treatment. The altercation occurred near midnight. According to the State,

> "[a] review of Mr. Thompson's chirps, which I think goes towards his danger to the public, is that at approximately 9:07 on the 18th he had sent an outbound message to an individual stating that I got four messages left so I'll be beating another MF'er up tonight just so I can get some food and dips."

5

The State argued that if the defendant was going to commit other offenses while in a secure facility, there were no other conditions of pretrial release that would alleviate the real concerns about the safety of the public. Finally, the State argued that the defendant was charged with aggravated battery while he was on bond for the charges in 23-CF-173. The State asked the court to grant its petition to deny pretrial release.

¶ 12   At the conclusion of the proffers and arguments, the trial court granted the State's petition to deny pretrial release and denied the defendant's motion to reconsider the conditions of pretrial release. The court found that the charge of unlawful possession of a weapon by a felon was a detainable offense. The court also found by clear and convincing evidence that the proof was evident or the presumption great that the defendant committed the offense of unlawful possession of a weapon by a felon, that the defendant posed a real and present threat to the safety of persons and the community based upon the facts of the case, and that no combination of conditions could mitigate that threat. The court noted that the rifle found in the defendant's vehicle was the same caliber as the weapon identified in the task force tip. After reviewing the criminal history in the pretrial bond report, the court noted that the defendant committed an offense within the past 10 years that qualified for Class X sentencing due to prior convictions for Class 2 felonies. The court also noted the defendant's prior conviction for use or manufacture of methamphetamine demonstrated that the defendant posed a danger to society, and that the aggravated battery incident occurred while the defendant was detained in a secure facility and after an order had been entered granting his pretrial release with conditions. The court concluded that the incident at the jail mitigated against placement in the Adult & Teen Challenge program.

6

¶ 13　In comments from the bench, the trial court indicated that there may be some confusion about the timeliness of the State's petition to deny pretrial release. The court explained that it found that the State's petition was timely because it was filed within 21 days from the effective date of the Act, and that the current hearing was the defendant's first appearance since the effective date of the Act. The trial court issued a written order of detention that same day. The defendant filed a timely notice of appeal. Ill. S. Ct. R. 604(h)(2) (eff. Sept. 18, 2023).

¶ 14　　　　　　　　　　　　II. ANALYSIS

¶ 15　On appeal, the defendant initially claims that the detention order should be vacated because the Act does not allow the State to file a petition to deny pretrial release unless the petition is filed within the timing requirements in section 110-6.1(c) of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/110-6.1(c) (West 2022)). The defendant also claims that the Act does not allow the State to file a verified petition to deny pretrial release for defendants who remain in custody after having been ordered released on the condition of depositing security. In response, the State argues that it was permitted to file a responsive petition to deny pretrial release under section 110-6(g) of the Code (725 ILCS 5/110-6(g) (West 2022)).

¶ 16　The defendant's claim presents an issue of statutory construction. "The primary goal of statutory construction, to which all other rules are subordinate, is to ascertain and give effect to the intention of the legislature" *Jackson v. Board of Election Commissioners*, 2012 IL 111928, ¶ 48. The best indication of the legislative intent is the plain language of the statute. *Jackson*, 2012 IL 111928, ¶ 48. "The statute should be evaluated as a whole, with

each provision construed in connection with every other section. When the statutory language is clear, we must apply the statute as written without resort to other tools of construction." *Jackson*, 2012 IL 111928, ¶ 48. Matters of statutory construction are reviewed *de novo*. *People v. Taylor*, 2023 IL 128316, ¶ 45.

¶ 17    Pretrial release is governed by article 110 of the Code (725 ILCS 5/art. 110 (West 2022)), as amended by the Act. Under the Code, a defendant's pretrial release may only be denied in certain statutorily limited situations. See 725 ILCS 5/110-2(a), 110-6.1 (West 2022). Upon filing a timely, verified petition requesting denial of pretrial release, the State has the burden to prove by clear and convincing evidence that the proof is evident or the presumption great that the defendant committed a qualifying offense, that the defendant's pretrial release poses a real and present threat to the safety of any person or the community or a flight risk, and that less restrictive conditions would not avoid a real and present threat to the safety of any person or the community and/or prevent the defendant's willful flight from prosecution. 725 ILCS 5/110-6.1(e), (f) (West 2022).

¶ 18    Section 110-6.1(c) of the Code addresses the timing of the State's petition. 725 ILCS 5/110-6.1(c) (West 2022). Section 110-6.1(c)(1) provides that the State may file a petition without prior notice to the defendant at the first appearance before a judge, or within 21 calendar days after arrest and release with reasonable notice to the defendant. 725 ILCS 5/110-6.1(c)(1) (West 2022). In *People v. Rios*, this court determined that the plain language in section 110-6.1(c)(1) set forth a deadline for the State to file a petition to detain. See 725 ILCS 5/110-6.1(c)(1) (West 2022); *Rios*, 2023 IL App (5th) 230724, ¶ 10. Specifically, this court determined that:

"The State may file a petition to detain at the time of the defendant's first appearance before a judge; no prior notice to the defendant is required. Alternatively, the State may file a petition to detain the defendant within 21 calendar days after the arrest and release of the defendant; however, reasonable notice is to be provided to the defendant under this circumstance." *Rios*, 2023 IL App (5th) 230724, ¶ 10.

¶ 19 This court found that the exceptions to the above timing requirements set forth in section 110-6 (725 ILCS 5/110-6 (West 2022)) were not applicable in the defendant's case since the defendant had not been released following his arrest and no new offenses had been alleged. *Rios*, 2023 IL App (5th) 230724, ¶ 12. As such, the State's petition to detain under section 110-6.1 was untimely, and the circuit court did not have the authority to detain the defendant pursuant to the untimely petition. *Rios*, 2023 IL App (5th) 230724, ¶ 12.

¶ 20 This court further found that the defendant fell within section 110-7.5(b) of the Code (725 ILCS 5/110-7.5(b) (West 2022)), because he was a person who remained in pretrial detention, on or after January 1, 2023, after having been ordered released with pretrial conditions. *Rios*, 2023 IL App (5th) 230724, ¶ 14. Section 110-7.5(b) states that such a defendant "shall be entitled to a hearing under subsection (e) of Section 110-5." 725 ILCS 5/110-7.5(b) (West 2022). Upon reviewing and analyzing sections 110-6.1(c)(1), 110-6, and 110-5(e) (725 ILCS 5/110-6.1(c)(1), 110-6, 110-5(e) (West 2022)), along with one another and the entire Code, this court determined that defendants, such as defendant Rios, have the following two options:

"Under sections 110-7.5(b) and 110-5(e), a defendant may file a motion seeking a hearing to have their pretrial conditions reviewed anew. Alternatively, a defendant

9

may elect to stay in detention until such time as the previously set monetary security may be paid. A defendant may elect this option so that they may be released under the terms of the original bail." *Rios*, 2023 IL App (5th) 230724, ¶ 16.

This court reasoned that while the plain language of section 110-1.5 of the Code (725 ILCS 5/110-1.5 (West 2022)) abolished the requirement of posting a monetary bail, it did not eliminate the option to post the previously ordered security, and some defendants may prefer the second option, as opposed to requesting a hearing. *Rios*, 2023 IL App (5th) 230724, ¶ 17.

¶ 21    In this case, as in *Rios*, the defendant was arrested and had a cash bond set prior to the effective date of the Act—September 18, 2023. The defendant remained in custody because he was unable to post the cash bond. But, unlike *Rios*, the defendant here initiated this proceeding by filing a motion to reconsider the conditions of pretrial release on September 27, 2023, pursuant to section 110-7.5(b) and section 110-5(e) of the Code (725 ILCS 5/110-7.5(b), 110-5(e) (West 2022)). Specifically, the defendant asked the court to remove the deposit of monetary security as a condition of his pretrial release and release him on the least restrictive pretrial conditions. The State then filed a responsive petition to deny pretrial release.

¶ 22    Section 110-6 of the Code addresses, among other things, the revocation of pretrial release and the modification of pretrial release conditions. 725 ILCS 5/110-6 (West 2022). Section 110-6(a) addresses revocation and provides as follows:

"When a defendant has previously been granted pretrial release under this Section for a felony or Class A misdemeanor, that pretrial release may be revoked only if

the defendant is charged with a felony or Class A misdemeanor that is alleged to have occurred during the defendant's pretrial release after a hearing on the court's own motion or upon the filing of a verified petition by the State." 725 ILCS 5/110-6(a) (West 2022).

¶ 23 Section 110-6(g) addresses the modification of conditions of pretrial release. It provides, "The court may, at any time, after motion by either party or on its own motion, remove previously set conditions of pretrial release, subject to the provisions in this subsection. The court may only add or increase conditions of pretrial release at a hearing under the Section." 725 ILCS 5/110-6(g) (West 2022). Section 110-6 also provides, "Nothing in this Section shall be construed to limit the State's ability to file a verified petition seeking denial of pretrial release under subsection (a) of Section 110-6.1 or subdivision (d)(2) of Section 110-6.1." See 725 ILCS 5/110-6(i) (West 2022).

¶ 24 In this case, the defendant was arrested and detained prior to the implementation of the Act, and he remained in detention after having been ordered released with conditions, including the posting of monetary security. Based on the plain language of the Code, the defendant had two options: (a) remain in detention until the previously set monetary security was paid, or (b) file a motion to modify the previously set conditions of pretrial release under sections 110-7.5(b) and 110-5(e) of the Code (725 ILCS 5/110-7.5(b), 110-5(e) (West 2022)). See *Rios*, 2023 IL App (5th) 230724, ¶¶ 16-17. The defendant elected to file a motion to modify the terms of his pretrial release and therein argued for the least restrictive conditions of pretrial release. Since the defendant moved to have his pretrial conditions reviewed anew, the State was permitted to file a responsive petition and make

11

opposing arguments. *People v. Gray*, 2023 IL App (3d) 230435, ¶¶ 14-15. Moreover, where, as here, it is alleged that the defendant committed a new felony after having been granted pretrial release, the State is permitted to file its verified petition to detain the defendant under section 110-6(a) of the Code. See 725 ILCS 5/110-6(a) (West 2022). For the reasons stated, we reject the defendant's contention that the trial court erred when it considered the State's petition to deny pretrial release.

¶ 25    The defendant next claims that the trial court's order of detention should be vacated because the State failed to prove by clear and convincing evidence that the defendant posed a real and present threat to the safety of persons and the community and that no conditions could mitigate that threat. The trial court may order a defendant detained pending trial if the defendant is charged with a qualifying offense, and the trial court concludes that defendant poses a real and present threat to the safety of any person or the community (725 ILCS 5/110-6.1(a)(1)-(7) (West 2022)). The Code provides a nonexclusive list of factors that the trial court may consider in making a "determination of dangerousness," *i.e.*, that the defendant poses a real and present threat to any person or the community. 725 ILCS 5/110-6.1(g) (West 2022). The trial court may consider evidence or testimony as to factors that include, but are not limited to: (1) the nature and circumstances of any offense charged, including whether the offense is a crime of violence involving a weapon or a sex offense; (2) the history and characteristics of the defendant; (3) the identity of any person to whom the defendant is believed to pose a threat and the nature of the threat; (4) any statements made by or attributed to the defendant, together with the circumstances surrounding the statements; (5) the age and physical condition of the defendant; (6) the age and physical

12

condition of the victim or complaining witness; (7) whether the defendant is known to possess or have access to a weapon; (8) whether at the time of the current offense or any other offense, the defendant was on probation, parole, or supervised release from custody; and (9) any other factors including those listed in section 110-5 of the Code (725 ILCS 5/110-5 (West 2022)). 725 ILCS 5/110-6.1(g) (West 2022).

¶ 26    If the trial court finds that the State proved a valid threat to the safety of any person or the community and/or that the defendant failed to abide by previously issued conditions of pretrial release, the court must determine which pretrial release conditions, "if any, will reasonably ensure the appearance of a defendant as required or the safety of any other person or the community and the likelihood of compliance by the defendant with all the conditions of pretrial release." 725 ILCS 5/110-5(a) (West 2022). In reaching its determination, the trial court must consider: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant;[3] (4) the nature and seriousness of the specific, real and present threat to any person that would be posed by the defendant's release; and (5) the nature and seriousness of the risk of obstructing or attempting to obstruct the criminal justice process. 725 ILCS 5/110-5(a) (West 2022). The statute lists no singular factor as dispositive. 725 ILCS 5/110-5(a) (West 2022).

---

[3]The defendant's history and characteristics include: "the defendant's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past relating to drug or alcohol abuse, conduct, *** criminal history, and record concerning appearance at court proceedings," as well as "whether, at the time of the current offense or arrest, the defendant was on probation, parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under federal law, or the law of this or any other state." 725 ILCS 5/110-5(a)(3)(A), (B) (West 2022).

¶ 27 If the trial court determines that the defendant should be denied pretrial release, the court is required to make written findings summarizing the reasons for denying pretrial release. 725 ILCS 5/110-6.1(h) (West 2022). The trial court's ultimate determination regarding pretrial release will not be reversed absent an abuse of discretion. *People v. Trottier*, 2023 IL App (2d) 230317, ¶ 13; *People v. Simmons*, 2019 IL App (1st) 191253, ¶ 9. Likewise, questions regarding whether the trial court properly considered one or more of the statutory factors in determining dangerousness and/or conditions of release are reviewed for an abuse of discretion. *Simmons*, 2019 IL App (1st) 191253, ¶ 15 (in considering trial court's decision to deny bail, the reviewing court will not substitute its judgment for that of the trial court merely because it would have balanced the appropriate factors differently). An abuse of discretion occurs when the decision of the circuit court is arbitrary, fanciful, or unreasonable, or when no reasonable person would agree with the position adopted by the trial court. *Simmons*, 2019 IL App (1st) 191253, ¶ 9.

¶ 28 Additionally, the trial court's finding that the State presented clear and convincing evidence showing that mandatory conditions of release would fail to protect any person or the community, and/or that the defendant had a high likelihood of willful flight to avoid prosecution, or that the defendant failed to comply with previously issued conditions of pretrial release thereby requiring a modification or revocation of the previously issued conditions of pretrial release will not be reversed unless those findings are against the manifest weight of the evidence. See *In re C.N.*, 196 Ill. 2d 181, 208 (2001) (applying a similar standard of review for the requirement of clear and convincing evidence by the State in termination of parent rights proceedings). "A finding is against the manifest weight

14

of the evidence only if the opposite conclusion is clearly evident or if the finding itself is unreasonable, arbitrary, or not based on the evidence presented." *People v. Deleon*, 227 Ill. 2d 322, 332 (2008).

¶ 29 In this case, the trial court determined that the defendant posed a real and present threat to the safety of persons and the community, and that no condition or combination of conditions could alleviate the threat. As noted earlier, the court considered the pending charges against the defendant, the defendant's prior criminal history, and the fact that defendant was charged with a crime of violence while in a secure facility after having been granted pretrial release with a condition that he should not violate any criminal statute of any jurisdiction. Based on our review of the record, and the proffers and arguments of counsel, we find that the trial court's finding that the defendant met the dangerousness standard, posing a real and present threat to the safety of any person or the community, was not against the manifest weight of the evidence, and, that the trial court's finding that no less restrictive conditions would avoid the real and present threat to the safety of any person or the community was not against the manifest weight of the evidence.

¶ 30                                   III. CONCLUSION

¶ 31 After a thorough review of the record, we do not find that the trial court abused its discretion in ordering the defendant's continued detention. The trial court conducted the proceedings in accordance with the Code, and its decision was not arbitrary, fanciful, or unreasonable. Accordingly, the trial court's order of pretrial detention is affirmed.

¶ 32 Affirmed.

15